# EXHIBIT 1

  U.S. DEPARTMENT OF LABOR

## Occupational Safety and Health Administration

Corporate-Wide Settlement Agreements - Publication Date  /  GEO Group, Inc.

- **Standard Number(s):**     1903.14a ;   1903.19 ;   1910.132(d)

December 20,2013

VIA FACSIMILE ONLY (404) 562-1650

Honorable Sharon D. Calhoun
Administrative Law Judge
Occupational Safety and Health
Review Commission
1924 Building - Room 2R90
100 Alabama Street, S.W.
Atlanta, GA 30303-3104

**Re: Secretary of Labor v. The GEO Group. Inc.**
OSHRC Docket No. 12-1 381 ; Region IV
Inspection No. 315306357
SOL Case No. 12-1 2439

Dear Judge Calhoun:

Enclosed is the executed Stipulation and Joint Motion which we believe disposes of all outstanding issues in this case.

Respectfully,

Stanley E. Keen
Regional Solicitor

By:Rolesia B. Dancy
Sophia E. Haynes
Attorneys

Enclosures

cc: J. Wilson Eaton III, Esq. (via e-mail)
Law Office of J. Wilson Eaton III PLLC
P. 0 . Box 3026
Gulfport, MS 39505
Wilson.eaton@eatonlawpllc.com

**UNITED STATES OF AMERICA**

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION**

Exhibit 1, Page 1 of 11

| SECRETARY OF LABOR, | ) | OSHRC DOCKET No |
|---|---|---|
| Complainant, | ) | 12-1381 |
| | ) | REGION IV |
| | ) | |
| | ) | |
| | ) | Inspection No. |
| | ) | 315306357 |
| | ) | |
| | ) | |
| v. | ) | |
| THE GEO GROUP, INC., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**STIPULATION OF SETTLEMENT**

Complainant and Respondent (together, the "Parties") hereby stipulate and agree as follows:

**l.** Respondent, The GEO Group, was cited on June 11, 2012, for alleged violations of the Occupational Safety and Health Act ("Act") and was issued a Citation and Notification of Penalty containing three citations.

**2.** Respondent is an employer within the meaning of Section 3(5) of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§651 et seq., ("Act"). Respondent filed with representatives of the Secretary of Labor a notice of intent to contest the Citation and Notification of Penalty referenced in paragraph 1 above. This notice was transmitted to the Occupational Safety and Health Review Commission ("Commission"), and it is agreed that jurisdiction over this proceeding is conferred upon the Commission by Section 10( c) of the Act.

**3.** The Parties agree that Citation 1, Item 1 and Citation 3, Item I shall remain as written. Respondent states that these citations have been and will remain abated.

**4.** The Parties stipulate and agree that Citation 2, Item 1 of the above referenced Citation and Notification of Penalty is amended to reclassify the citation from Willful to Serious and to include the terms of this Stipulation of Settlement ("Agreement") as required abatement, as well as the abatement measures set forth in the Compliance Plan which is incorporated in this Agreement as "Appendix A". Respondent agrees that the abatement measures incorporated into this Agreement are required of Respondent and acceptable to Complainant as full and complete abatement of the violation alleged. The parties also agree that Citation, 2, Item 1 is amended to delete sub-paragraphs (a) through (f).

**5.** Respondent hereby withdraws its notice of contest to the Citation and Notification of Penalty, as amended and set forth herein, and the Parties agree to the entry of a final, enforceable Order ofthe Commission consistent with the terms of this Agreement.

**6.** Respondent agrees to pay to the Occupational Safety and Health Administration ("OSHA") the total proposed penalty amount of $13,600 in full settlement of the assessed penalty in this matter within ten (10) calendar days of the entry of an Order of the Commission approving this Agreement. Payment shall be accomplished by mailing a check payable to "DOL-OSHA" to OSHA's Jackson Area Office, A.H. McCoy Federal Bldg, IOO West Capitol Street, Suite 749, Jackson, Mississippi, 39269.

**7.** With respect to Citation 2, Item 1 of the above-referenced Citation and Notification of Penalty, and pursuant to 29 C.F.R. § 1903.19, Respondent shall submit to the Directorate of Enforcement Programs in OSHA's National Office and the Regional Office certification that the Company has completed each of the abatement measures set forth in the Compliance Plan (attached hereto as Appendix A). Respondent will submit the certification within 10 calendar days after expiration of the time periods specified in the Compliance Plan for completion of each of those measures.

**8.** The Parties understand and agree that a failure to perform in good faith any of the abatement measures required in the Compliance Plan or other provisions of this Agreement may be cited as failure to abate under Section 10(b) of the Act, 29 U.S.C. §659(b), and may be subject to an enforcement action brought by Complainant pursuant to Section 11 (b) of the Act, 29 U.S.C. §660(b), to the same extent as if these abatement measures had been set forth from the outset in the Citation and Notification of Penalty issued in this matter. Respondent agrees that it will not oppose the entry, pursuant to Section 11(b) of the Act, of an order of enforcement by the United States Court of Appeals to which Complainant presents this Agreement and supporting documents.

**9.** The Parties stipulate and agree that Respondent reserves its right to Petition OSHA for Modification of Abatement Dates, pursuant to 29 C.F.R. § 1903.14a, if Respondent is unable to meet any abatement deadline set forth in the Compliance Plan appended to this Agreement because of factors beyond Respondent's reasonable control and despite Respondent's good faith effort to comply with the required abatement measures. Complainant agrees that any such Petition for Modification of Abatement Date ("PMA") submitted by Respondent to the Directorate of Enforcement Programs in OSHA's National Office and the Regional Office, and any extension of time approved by OSHA in response to such a PMA,

need not be made specific to a single worksite, but may be made to apply to any or all of the worksites covered by this Agreement. The Parties further stipulate and agree that any extension of time approved by OSHA's National Office and the Regional Office in response to a PMA submitted by Respondent during the term of this Agreement shall be automatically incorporated into this Agreement and binding upon the Parties, and that Respondent retains its right to seek variances and/or other legal redress as to implementation of abatement as may be available at law.

**10.** Respondent certifies that affected employees are represented by the Security, Police and Fire Professionals of America at the following correctional and adult detention center locations:

D. Ray James Correctional Facility, 3262 Highway 252, Folkston, GA 31537; Moshannon Valley Correctional Facility, 555 GEO Drive, Philipsburg, PA 16866; Big Spring Correctional Center, 1701 Apron Drive, Big Spring, TX 79720; Central Texas Detention Facility, 218 South Laredo Street, San Antonio, TX 78207; Montgomery (Joe Corley Detention Facility), 500 Hilbig Street, Conroe, TX 77301; Rio Grande Detention Center, 1001 San Rio Boulevard, Laredo, TX 78046; South Texas Detention Complex, 566 Veterans Drive, Pearsall, TX 78061; Val Verde Correctional Facility, 253 FM 2523 Hamilton Lane, Del Rio, TX 78840; Adelanto Detention Facility, 10400 Rancho Road, P. 0. Box 6005, Adelanto, CA 92301; Central Arizona Correctional Facility, 1401 East Diversion Dam Road, Florence, AZ 85132.

Respondent certifies that affected employees are represented by the United Federation of Special Police and Security Officers, Inc. and its affiliated Local #500 at the following correctional and adult detention center location:

Queens Private Detention Facility, 182-22 1501 h Avenue, Jamaica, NY 11413

Respondent certifies that affected employees are represented by the United Government Security Officers of America, International Union at the following correctional and adult detention center location:

Aurora Ice Processing Center, 3130 North Oakland Street, Aurora, CO 80010

Respondent certifies that there is no authorized employee representative of Respondent's employees that are affected by this Agreement at the following correctional and adult detention facility locations:

Allen Correctional Center, 3751 Lauderdale Woodyard Road, Kinder, LA 70648; Blackwater River Correctional Facility, 5914 Jeff Ates Road, Milton, FL 32583-8233; Broward Transition Center, 3900 North Powerline Road, Pompano Beach, FL 33073; D. Ray James Detention Facility, 3423 Highway 252 East, Folkston, GA 31537, Mailing: P. 0. Box 2005, Folkston, GA 31537; Lasalle Detention Facility, P. 0. Box 2826, 830 Pinehill Rd., Jena, LA 71342; Lawrenceville Correctional Center, 1607 Planters Road, Lawrenceville, VA 23868; New Castle Correctional Facility, 1000 Van Nuys Road, New Castle, IN 47362; Plainfield Short Term Offender Program, 501 West Main Street, Plainfield, IN 46168; Riverbend Correctional Facility, 196 Laying Farm Road, Milledgeville, GA 31061; Rivers Correctional Institution, 145 Parker's Fishery Road, P. 0. Box 840, Winton, NC 27986; Robert A. Deyton Detention Facility, 11866 Hastings Bridge Road, P. 0. Box 429, Lovejoy, GA 30250; South Bay Correctional Facility, 600 US Highway 27 South, South Bay, FL 33493; Cleveland Correctional Center, 901 East 51 h Street, Cleveland, TX 77327, Mailing: P. 0. Box 1678, Cleveland, TX 77328; Karnes County Civil Detention Center, 409 FM 1144, Karnes City, TX 78118; Kames County Correctional Center, 810 Commerce Street, Karnes City, TX 78118; Lawton Correctional Facility, 8607 Southeast Flower Mound Road, Lawton, OK 73501; Lockhart Secure Work Program Facility, 1400 Industrial Boulevard, P. 0. Box 1170, Lockhart, TX 78644-1170; Arizona State PrisonFlorence West, 915 East Diversion Dam Road, P. 0. Box 1599, Florence, AZ 85232; Arizona State Prison- Phoenix West, 3402 West Cocopah, Phoenix, AZ 85009; Central Valley Medium Community Correctional Facility, 245 Taylor Avenue, McFarland, CA 93250; Desert View Medium Community Correctional Facility, 10450 Rancho Road, Adelanto, CA 92301; Golden State Medium Community Correctional Facility,611 Frontage Road, McFarland, CA 93250; Guadalupe County Correctional Facility, South Highway 54, P. 0. Box 520, Santa Rosa, NM 88435; Hudson Correctional Facility, 3001 North Juniper Street, Hudson, CO 80642; Lea County Correctional Facility, 6900 West Millen Drive, Hobbs, NM 88240; Northeast New Mexico Detention Facility (Clayton), 185 Dr. Michael Jenkins Road, Clayton, NM 88415; Northwest Detention Center, 1623 East J Street, Tacoma, WA 98421; Western Region Detention Facility At San Diego, 220 West C Street, San Diego, CA 92101, Reeves County Detention Complex (R1 and R2), 98 West County Road 204, P.O. Box 1560, Pecos, Texas 79772; Reeves County Detention Complex (R3), 100 West County Road 204, P.O. Box 2038, Pecos, Texas, 79772.

Respondent further certifies that this Agreement has been served on its employees by posting a copy of the Agreement at the cited worksites on_____, 2013, in accordance with Rules 7 and 100 of the Rules of Procedure of the Commission. Respondent further agrees that it shall post the SUMMARY of this Agreement set forth in the attached Appendix B, at all worksites subject to this Agreement, in places where affected employees may see it, within 30 days after the ALJ's approval of this Agreement, and said SUMMARY will remain posted in said locations until the expiration of this Agreement.

**11.** The Parties stipulate and agree that the terms of this Agreement are intended to apply to all of the correctional and adult detention center facility worksites of Respondent that are located within Federal OSHA's jurisdiction. In addition, over and above the requirements of this Agreement, Respondent intends to implement the abatement measures set forth in the attached Compliance Plan (Appendix A) at the Company's correctional and adult detention center facility worksites that are located in states that have assumed authority for the enforcement of OSHA Standards under a state plan pursuant to Section 18 of the Act ("State OSHA jurisdictions"). OSHA will notify the state plan officials in these State OSHA jurisdictions ofthe existence of this Agreement and will provide such officials with copies of this Agreement. Respondent agrees to inform OSHA of the city and state locations of all of Respondent's correctional and adult detention facility worksites in the United States, including those

in state OSHA plan states. Respondent shall submit to OSHA a list of such worksites that are in existence on the effective date of this Agreement, and shall notify OSHA within 90 calendar days of any newly acquired facility or facility that is no longer operated by Respondent during the term of this Agreement. These notifications shall be submitted to the same individuals designated by OSHA for receipt of progress reports discussed in paragraph 13 below.

**12.** Except as otherwise provided, nothing in this Agreement shall limit OSHA's right to use, any or all, enforcement measures provided under the Act.

**13.** Respondent agrees to monitor its progress in implementing a Workplace Violence Prevention Program, and to provide written progress reports on the status of that activity every 90 calendar days after the effective date of this Agreement to individuals designated by OSHA for the receipt of such reports.

**14.** Respondent agrees to engage at its own cost a qualified third-party consultant to conduct annual audits of Respondent's correctional and adult detention facility worksites and to monitor and assist with the Company's development and implementation of the Workplace Violence Prevention Program as specified in the Compliance Plan (Appendix A of this Agreement). The consultant will be retained for the term of this Agreement. The consultant's audits of Respondent's correctional and adult detention facility worksites will be included in the written progress reports referenced in Paragraph 13 above.

**15.** Respondent agrees to permit OSHA to physically enter into and conduct monitoring inspections at the Company's correctional and adult detention facility worksites within Federal OSHA's jurisdiction to verify compliance with this Agreement. Respondent shall not require any warrants for entry by OSHA, and shall not require subpoenas for access to documents, witnesses, or other information related to compliance with this Agreement. The scope of the OSHA monitoring inspections shall be limited to the verification of compliance with this Agreement, unless other non-compliant conditions are observed in the plain view of an OSHA compliance officer during the verification visit. Nothing in this Agreement shall be construed as a waiver or limitation of the Secretary's ability to monitor and/or enforce Respondent's compliance with the terms of this Agreement, or to otherwise enforce the Act; and nothing in this Agreement shall be construed to prejudice Respondent's rights to raise any defense or argument in any future or pending cases before this Commission.

**16.** Complainant agrees that if, during the term of this Agreement, OSHA reaches a preliminary determination that Respondent may not be in compliance with this Agreement, OSHA shall first notify Respondent in writing to Tom Boyer, Vice President, Risk Management, The GEO Group, One Park Place, Suite 700, 621 NW 53rd Street, Boca Raton, FL 33487. Respondent will have 15 calendar days from its receipt of OSHA's notification to provide a written response addressing any deficiencies noted to the Director of Enforcement Programs, U.S. Department of Labor, Occupational Safety and Health Administration, 200 Constitution Avenue, NW, Room N-3119, Washington, DC 20210 and the Atlanta Regional Office, Occupational Safety and Health Administration, 61 Forsyth St, Room 6T50, Atlanta, Georgia 30303. Within 30 calendar days after OSHA's receipt of Respondent's written response, the Parties will enter into good faith discussions in an attempt to resolve the issue. If the Parties are unable to resolve the issue within 15 calendar days of entering into such discussions, Complainant shall determine the appropriate course of action.

**17.** Each Party agrees to bear its own attorneys' fees, costs, and other expenses incurred by such Party in connection with any stage of the above-referenced proceeding including, but not limited to, attorneys' fees that may be available under the Equal Access to Justice Act, as amended.

**18.** None of the foregoing agreements, statements, findings, stipulations, and actions is intended as an admission by Respondent of the allegations contained within the citation, notification of penalties and the Complaint herein. The agreements herein are not intended to be used for any purpose other than actions arising directly under the Occupational Safety and Health Act of 1970, nor are they intended to be offered as evidence in any other federal or state court action.

**19.** Complainant agrees that, upon receiving any request for information from any third-party seeking any agreements, statements, stipulations, reports, and/or any other documents generated by Respondent as a result of requirements set forth in this Agreement, but which Respondent has marked as containing confidential trade secret or business confidential information, Complainant shall notify Respondent within 5 calendar days so the Company can intervene to object to Complainant's production of said agreements, statements, stipulations, reports, and/or other documents.

**20.** This Agreement shall become effective on the date that it becomes a Final Order of the Commission, and shall remain in effect for a term of 3 years from that effective date. Before the termination date of this Agreement, either Party may give notice to the other that it wishes to extend the Agreement for another term. If a Party gives such notice in writing, the Parties agree to enter into good faith discussions to address the continuation of the Agreement and the Parties agree that the Agreement shall thereafter remain in effect for up to 45 calendar days after the end of the three year term to allow the Parties to complete these good faith discussions.

| FOR RESPONDENT: | FOR COMPLAINANT: |
|---|---|
| Date: 12/20/2013 | M. PATRICIA SMITH<br>Solicitor of Labor |
| J WILSON EATON, III<br>Attorney for The GEO Group , Inc.<br>Law Office of Wilson Eaton, III, PLLC<br>P.O. Box 3026<br>Gulfport, MS 39505 | STANLEY KEEN<br>Regional Solicitor<br><br>CHRISTOPHER D. HELMS<br>Counsel<br><br>Date: 12/20/2013<br><br>ROLESIA BUTLER DANCY<br>SOPHIA E. HAYNES<br><br>Attorneys for Complainant.<br>U.S. Department of Labor<br>Occupational Safety and Health<br>Administration<br><br>TERESA A. HARRISON<br>Acting Regional Administrator<br>Region IV<br>Occupational Safety and Health<br>Administration |

APPENDIX A

**COMPLIANCE PLAN**

**I. PREAMBLE**

The Parties agree that employees at correctional facilities are at risk for serious injury and death from violent and hostile behavior from inmates. The GEO Group is committed to materially reducing or eliminating the hazard of violence, harassment, intimidation and other disruptive behavior directed toward employees in its workplaces. The Parties agree that the establishment and implementation of a Workplace Violence Prevention Program that includes worksite analyses, written policies, training and administrative and engineering controls can reduce or eliminate the hazards to worker health and safety in correctional facilities.

**II. DEFINITIONS**

A. The term "Workplace Violence" as used in the Agreement and this Appendix means any act or threat of physical violence, harassment, intimidation, or other threatening disruptive behavior directed toward employees that occurs at the work site. It can affect and involve employees, contractors, inmates, and visitors at the workplace.

B. The term "Incident' as used in the Agreement and this Appendix means any action, event, situation or occurrence which involves actual or potential workplace violence. The term shall also include "near misses". Near misses describe incidents where no property is damaged and no personal injury sustained, but where, given a slight shift in time or position, damage and/or injury easily could have occurred.

**III. COMPLIANCE MEASURES**

The Parties thus agree to the following compliance measures during the term of the Stipulation of Settlement ("Agreement"):

**A. Workplace Violence Prevention and Safety Program.**

Respondent will develop and maintain, with the assistance of a third-party consultant as described in III (B) below, a Workplace Violence Prevention Program ("WVPP") which will be completed on or before June 1, 2014. Such program shall apply to all of Respondent's correctional and adult detention facilities and employees, and shall include but not be limited to the following:

1. A written workplace violence policy and procedure that clearly defines what is considered workplace violence and is endorsed by the highest level of management.

2. A clear statement regarding Management Commitment and Employee Involvement.

3. Worksite analysis and job hazard assessment for each of Respondent's worksites to find existing or potential hazards for workplace violence.

4. Hazard prevention and control through the implementation of engineering and administrative controls.

5. Safety and health training to make all employees aware of security hazards and how to protect themselves through established policies, procedures and training.

6. Procedures for reporting and for the investigation of act or threats of violence in the workplace and a system designed to quickly recognize trends or patterns of work place violence.

7. Recordkeeping and annual evaluation of WVPP.

8. Prohibition against the placement of inmates in cells with inoperable doors/locks.

9. Procedures that clearly and specifically designate the situations and in which employees should not work alone.

10. The provision of medical/psychological support to staff after incidents of workplace violence.

11. Commitment to employees that there will be no retaliation for reporting concerns about actual or potential workplace violence.

12. An annual audit of the WVPP program which will include an onsite audit as provided in Paragraph B, 4, infra. Respondent agrees to post conspicuously the results of the audit where affected employees can review them; implement corrective action promptly; and track progress and completion of corrective action. The first audit will be conducted at the end of the first 12 months after the execution of this Agreement.

**B. Retention of Third-Party Consultant.**

1. Respondent agrees to retain a third-party corrections management consultant who is qualified by education, experience and training with expertise in the field of corrections management and related workplace hazards ("Consultant") to conduct WVPP audits and review Respondent's development and implementation of the Workplace Violence Prevention Program.

2. Respondent agrees to provide the credentials of the Consultant, for review on or before February 14, 2014. OSHA shall have 10 calendar days thereafter to object to Respondent's selection. If OSHA objects, the agency shall indicate to Respondent the grounds for the objection, and Respondent will then continue to search until it locates persons to whom OSHA does not object. The selected consultant shall be retained by Respondent promptly following expiration of the 10-day period without objection.

3. The Consultant engaged under this Section shall assist Respondent in the development and implementation of its WVPP, including the implementation of training, worksite analyses and written policies and procedures.

4. Beginning July 1, 2014, the Consultant shall conduct a workplace violence onsite safety audit ("safety audit") at each of Respondent's correctional and adult detention facilities. The Consultant will conduct on-site safety audits as follows: (1) during months 7 through 18 of this Agreement, the Consultant will conduct on-site safety audits for at least 16 of Respondent's correctional and adult detention facilities; during months 18 through 30 of this Agreement, the Consultant will conduct on-site safety audits for at least 18 of Respondent's correctional and adult detention facilities and during months 30 through 36 of this Agreement, the Consultant will conduct on-site safety audits at all of Respondent's remaining correctional and adult detention facilities. The Consultant will prepare a Report for each facility which shall review the implementation of Respondent's WVPP to include, but not be limited to a review of the following:

> a. Administrative controls and work practice controls, including, but not limited to ensuring that employee working alone in high risk areas have two way radios with man down alarm systems;
>
> b. Engineering controls, including, but not limited to, two way radios, alarm systems, video cameras, and metal detectors;
>
> c. The operation of locking mechanisms, including cell door lock systems and cell door maintenance;
>
> d. The operation of housing control systems and indicators;
>
> e. Staffing plans, and staff deployment, including, but not limited to, post assignments, appropriate or optimal staffing numbers to minimize workplace violence, working alone at posts, and staff turnover;
>
> f. The need for Personal Protective Equipment ("PPE");
>
> g. The physical environment of each facility to determine the presence of factors which may place an employee at risk.

5. As part of the audit, the Consultant shall interview a random sampling of employees at each worksite about workplace violence and safety.

6. Respondent will provide the Consultant's Report to OSHA. The Consultant's WVPP Audit Report for each facility will also be provided to each facility's public contracting agency upon request. The results of the WVPP audits shall be posted conspicuously where affected employees and affected contractor employees can review them.

7. Respondent will implement all feasible recommendations included in the WVPP audits. In the event any recommendations and/or deficiencies noted in the Audit Reports cannot be promptly implemented and/or corrected, Respondent agrees to provide interim measures immediately to prevent or materially reduce employee exposure. If Respondent believes the recommendations and/or deficiencies observed are not feasible to implement and/or correct or cannot be implemented and/or corrected within a period of 60 calendar days from the audit date, no later than 60 calendar days from the audit date, Respondent shall document the reasons for such infeasibility or the delay in implementation and/or correction, the interim measures in place, the permanent or alternative corrective measures to be implemented, and the schedule for implementation. Such documents shall be provided to Complainant upon request.

**C. Creation of Corporate Workplace Violence Coordinator Position and Management Accountability for Safety.**

Respondent will create a full-time Workplace Violence Coordinator position at the highest corporate management level on or before March 1, 2014. The Workplace Violence Coordinator will be qualified by education, experience and training in coordinating workplace violence prevention and response, including taking steps to prevent incidents, responding to incidents, and coordinating post-incident activities. Further, as part of its performance evaluation system, Respondent will ensure that all correctional and adult detention facility employees with management/supervisory duties will have a performance indicator for workplace violence prevention. Respondent shall assess correctional and adult detention facility managers'/supervisors' performance in the area of workplace violence prevention annually.

**D. Creation of a Workplace Safety Committee**

1. Immediately upon the execution of this Agreement, and no later than February 14, 2014, Respondent will create a WVPP Committee at each correctional and adult detention worksite to address workplace violence issues, including workplace violence incidents. At non-union worksites, the WVPP Committee shall be composed of management employees and shall meet at least twice per month. At union worksites, the WVPP Committee shall be composed of an equal number of both management and non-management employees. The Committee shall receive input from employees prior to each meeting regarding workplace violence hazards at the worksite and create a culture of communication and cooperation to encourage and enable effective employee involvement in decisions that affect employees' safety and health.

2. The WVPP Committee shall investigate all reports of workplace violence and will have access to the information described in Paragraph (F) below. The WVPP Committee shall insure that information concerning workplace violence incidents and the names of specific inmate(s) involved be provided to staff at roll call and that the minutes from WVPP committee meetings will be immediately posted in a conspicuous location in the workplace. The WVPP Committee will submit investigatory reports and minutes from its meetings to the Corporate Workplace Violence Coordinator and Warden or Facility Administrator, as applicable.

3. *Worksite Analysis.* On or before March 31, 2014, Respondent will ensure that each WVPP Committee has completed a Worksite Analysis at each facility. The Analysis will review every aspect of the workplace to address existing or potential hazards for workplace violence. The analysis will include an assessment of the staffing, security and maintenance of all cells and door locking indicators and a review of job assignments which require employees to work alone at the correctional facility. The Safety Committee will recommend to the Warden or Facility Administrator, as applicable, all measures that will reduce the risk of workplace violence.

> a. In the event any deficiencies observed in the analysis cannot be promptly corrected, Respondent agrees to provide interim measures immediately to eliminate or materially reduce the risk of employee exposure. If Respondent believes the deficiencies observed are not feasible to correct or cannot be corrected within 45 calendar days from the inspection date, no later than 45 calendar days from the inspection date, Respondent shall document the reasons for such infeasibility or the delay in correction, the interim measures in place, the permanent or alternative corrective measures to be implemented, and the schedule for implementation.
>
> b. A written worksite analyses for each correctional facility shall be provided to the third-party consultant described in paragraph B and reviewed by the Consultant.
>
> c. Worksite Analyses will be updated annually by the WVPP Committee.

**E. Workplace Violence Prevention Training.**

Respondent will develop and maintain training for all its correctional and adult detention facility employees regarding workplace violence and prevention. On or before June 30, 2014, Respondent shall require all Respondent's employees to successfully complete the training. Such training shall include, but not be limited to, the following:

1. Risk factors identified in the workplace assessment.

2. Measures to protect employees from the identified risks, including specific procedures that GEO has implemented to protect employees such as incident alert and notification procedures, appropriate work practices, emergency procedures, and use of security alarms, radio and other devices.

3. Review of the written workplace violence program.

4. How to report workplace violence concerns and GEO's commitment that there will be no retaliation for reporting concerns about workplace violence.

5. Advanced training for supervisory personnel on the staffing issues which will include topics such as: post modifications, staffing rosters, relief factors, and staff experience level.

A copy of the WVPP policy will be provided to all correctional and adult detention center employees. The training shall be provided at the time of the employee's initial assignment and at least annually thereafter. On or before March 31, 2014, Respondent shall provide a lesson plan or written outline of the training to the Regional Office and the Consultant for review and approval.

**F. Reporting of Workplace Violence Incidents**

1. Respondent will develop a data-base to be used by Respondent as a management tool designed to track and identify workplace violence incidents, trends and patterns and provide a formal means of intervention to correct workplace violence issues. The system will provide a means of collecting data regarding workplace violence incidents at each correctional and adult detention facility website, show patterns/trends, and track how such incidents are resolved. The Workplace Violence Coordinator described in Paragraph C above, will review workplace violence incident reports every six months to identify trends in the types of incidents and review the effectiveness of the mitigating actions taken.

2. As part of its WVPP Policy, Respondent will develop and maintain a workplace violence incident report. The report can be in any fonnat, but at a minimum must contain the following information related to the incident being reported: Workplace location where incident occurred; Time of day/shift when incident occurred; Detailed description of the incident, including events leading up to the incident and how the incident ended; Names and job titles of involved employees; Name or other identifier of other individuals(s) involved; Names of witnesses; Mitigating Action taken to address the cause of the incident. The incident reports will be made available to employees and authorized employee representatives upon request.

3. The workplace violence incident report must be maintained for use in the annual program review and kept by Respondent for at least 5 years.

4. All new GEO contracts for managing/operating correctional and adult detention centers will require reporting of all workplace violence incidents and all staff complaints about workplace violence to the public correctional agency. Respondent will voluntarily provide this information to current public agencies with whom it contracts.

5. Respondent will develop a protocol with the local District Attorney or Police for each correctional and adult detention facility to insure that violent crimes committed against employees in the workplace are promptly reported for investigation and appropriate prosecution. Respondent will provide information on such protocols and contact information to employees who wish to file a criminal complaint after a workplace violence incident.

**G. Preventative Maintenance Policy.**

On or before March 31, 2014, Respondent will develop a program to continuously inspect each correctional and adult detention facility worksite for problems or defects related to cell door locks, inmate monitoring systems and door lock status equipment; and to institute interim protective measures (including requesting the removal of inmates from the facility) if defective equipment cannot be repaired immediately and there is no acceptable alternative housing.

**H. Record Maintenance/Retention Policy.**

On or before March l, 2014, Respondent will develop a record retention policy to ensure that all incident reports, unusual occurrence reports, logbooks, daily and master staffing rosters, staffing plans, maintenance records and other related information for correctional and adult detention facilities is kept by Respondent for at least 5 years.

**I. Assessment and Policy on PPE, Other Equipment and Engineering Controls.**

On or before March 31, 2014, Respondent shall conduct a hazard assessment pursuant to 29 C.F.R. § 19 0.132(d) regarding workplace violence hazards at Respondent's correctional and adult detention facilities, shall select, and have each affected employee use the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment. Respondent shall also conduct an assessment, identify and select, and have each affected employee use any other equipment or engineering controls that will protect affected employees from workplace violence hazards. The policy shall clearly establish if and when PPE, other equipment or engineering controls will be provided to employees.

**IV. THE GEO GROUP FACILITIES WITHIN THE UNITED STATES**

As of the date of Respondent's execution of the Agreement, Respondent represents that it is engaged in the operation of correctional and adult detention facilities at the following locations in both Federal and State OSHA jurisdictions:

**FEDERAL OSHA JURISDICTION WORKSITES**

ALLEN CORRECTIONAL CENTER-Kinder, LA
BLACKWATER RIVER CORRECTIONAL FACILITY-Milton, FL
D. RAY JAMES CORRECTIONAL FACILITY-Folkston, GA
MOSHANNON VALLEY CORRECTIONAL FACILITY -Philipsburg, PA
RIVERBEND CORRECTIONAL FACILITY -Milledgeville, GA
SOUTH BAY CORRECTIONAL FACILITY-South Bay, FL
BIG SPRING CORRECTIONAL CENTER-Big Spring, TX
CLEVELAND CORRECTIONAL CENTER-Cleveland, TX
KARNES COUNTY CORRECTIONAL CENTER-Kames City, TX
KARNES COUNTY CIVIL DETENTION CENTER, Kames City, TX
LAWTON CORRECTIONAL FACILITY -Lawton, OK
VAL VERDE CORRECTIONAL FACILITY -Del Rio, TX
HUDSON CORRECTIONAL FACILITY-Hudson, CO
BROWARD TRANSITION CENTER, Pompano Beach, FL
D. RAY JAMES DETENTION FACILITY, Folkston, Ga
LASALLE DETENTION FACILITY, Jena, LA
ROBERT A. DEYTON DETENTION FACILITY, Lovejoy, Ga
QUEENS PRIVATE DETENTION FACILITY, Jamaica, NY
CENTRAL TEXAS DETENTION FACILITY, San Antonio, TX
LOCKHART SECURE WORK PROGRAM FACILITY, Lockhart, TX
MONTGOMERY (JOE CORLEY) DETENTION FACILITY, Conroe, TX
RIO GRANDE DETENTION CENTER, Laredo, TX
SOUTH TEXAS DETENTION COMPLEX, Pearsall, TX

AURORA ICE PROCESSING CENTER, Aurora, CO

REEVES COUNTY DETENTION COMPLEX (R 1 AND R2), Pecos, TX

REEVES COUNTY DETENTION COMPLEX (R3), Pecos, TX

**STATE OSHA JURISDICTIONS WORKSITES**

ARIZONA STATE PRISON- FLORENCE WEST-Florence, AZ

ARIZONA STATE PRISON - PHOENIX WEST -Phoenix, AZ

CENTRAL ARIZONA CORRECTIONAL FACILITY -Florence, AZ

GOLDEN STATE MEDIUM COMMUNITY CORRECTIONAL FACILITY -McFarland, CA

NEW CASTLE CORRECTIONAL FACILITY -New Castle, IN

GUADALUPE COUNTY CORRECTIONAL FACILITY -Santa Rosa, NM

LEA COUNTY CORRECTIONAL FACILITY -Hobbs, NM

RIVERS CORRECTIONAL INSTITUTION-Winton, NC

LAWRENCEVILLE CORRECTIONAL CENTER-Lawrenceville, VA

PLAINFIELD SHORT TERM OFFENDER PROGRAM, Plainfield, IN

ADELANTO DETENTION FACILITY, Adelanto, CA

CENTRAL VALLEY MEDIUM COMMUNITY CORRECTIONAL FACILITY, McFarland,CA

DESERT VIEW MEDIUM COMMUNITY CORRECTIONAL FACILITY, Adelanto, CA

NORTHEAST NEW MEXICO DETENTION FACILITY (CLAYTON), Clayton, NM

NORTHWEST DETENTION CENTER, Tacoma, WA

WESTERN REGION DETENTION FACILITY AT SAN DIEGO, San Diego, CA

APPENDIX B

**SUMMARY OF AGREEMENT**

**Notice of Settlement Between The GEO Group, Inc. and OSHA, and Summary of**

**Nationwide Workplace Violence Safety Initiatives**

The Occupational Safety and Health Administration ("OSHA") and The GEO Group, Inc. ("GEO") have entered into a written settlement agreement ("Agreement") to settle an OSHA case pending before the Occupational Safety and Health Review Commission. The Agreement will be effective through January 1, 2017 and resolves allegations of workplace violence contained within OSHA citations that were issued following a health and safety inspection at the East Mississippi Correctional Facility in Meridian, Mississippi. At the time of the inspection, GEO was the operator of that facility.

This notice summarizes the workplace violence prevention measures GEO has agreed to implement in all of its correctional and adult detention facilities ("Facilities") in the United States. Specifically, the Agreement provides that GEO will:

- Hire a third party corrections management consultant who will conduct an audit of, including but not limited to, the adequacy of staffing plans, the need for Personal Protective Equipment, and the physical environment to determine the presence of factors which may place an employee at risk in each of GEO's correctional and adult detention facilities.
- Conduct a hazard assessment regarding workplace violence hazards and have each affected employee use the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment.
- Develop and implement a Workplace Violence Prevention and Safety Program at each of GEO's correctional and adult detention facilities.
- Provide employee training in the Workplace Violence Prevention Program.
- Create a Workplace Safety Committee at each of GEO' s correctional and adult detention facilities that will address workplace violence incidents and enable employee involvement in decisions that affect employee safety and health.
- Develop a data-base to be used to identify, track, and communicate to potentially exposed staff workplace violence incidents, trends and patterns and provide a formal means to correct workplace violence issues.
- Report all workplace violence incidents and staff complaints about workplace violence to the public correctional agency.

The full text of the settlement agreement can be found on OSHA's website at www.osha.gov

Protection from retaliation: The Occupational Safety and Health Act ("OSH Act") prohibits persons from retaliating against any employee because the employee has exercised a right protected by the OSH Act, including complaining to their employer, to OSHA, or to other government agencies about unsafe or unhealthful working conditions in the workplace. Types of prohibited retaliation include firing, transferring, denying benefits, reducing pay or hours and other actions. Complaints of retaliation may be filed directly with OSHA.

For more information about OSHA or if you think your job is unsafe and you have questions, contact OSHA's toll free number at 1 (800) 321-0SHA (6742) or visit OSHA's website at www.osha.gov. Your communication to OSHA is confidential.

Scroll to Top

| OSHA | Standards | Enforcement | Topics | Media Center | Contact Us |



**U.S. DEPARTMENT OF LABOR**

Occupational Safety and Health Administration
200 Constitution Ave NW
Washington, DC 20210
📞 1-800-321-OSHA
1-800-321-6742
www.osha.gov

| **FEDERAL GOVERNMENT** | **OCCUPATIONAL SAFETY & HEALTH** | **ABOUT THE SITE** |
|---|---|---|
| White House | Frequently Asked Questions | Freedom of Information Act |
| Benefits.gov | A - Z Index | Disclaimers |
| Coronavirus Resources | Freedom of Information Act - OSHA | Plug-ins Used on DOL.gov |
| Disaster Recovery Assistance | Read The OSHA Newsletter | Accessibility Statement |
| DisasterAssistance.gov | Subscribe to the OSHA Newsletter | |
| USA.gov | OSHA Publications | |
| Notification of EEO Violations | Office of Inspector General | |
| No Fear Act Data | | |
| U.S. Office of Special Counsel | | |

**Connect With OSHA**

    

Site Map   |   Important Website Notices   |   Privacy & Security Statement

**Exhibit 1, Page 11 of 11**