1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEPARTMENT OF LABOR AND
INDUSTRIES OF THE STATE OF
WASHINGTON,

                    Plaintiff,

        v.

GEO SECURE SERVICES, LLC; THE
GEO GROUP, INC.,

                    Defendant.

CASE NO. C24-5095 BHS

ORDER

14

15

16

17

18

19

20

        This matter is before the Court the Washington Department of Labor and

Industries (L&I)'s motions to remand this matter to the Pierce County Superior Court,

Dkt. 10; to consolidate this matter with *State of Washington Dep't of Health v. The GEO*

*Group, Inc.*, No. C24-5029 BHS, Dkt. 18; and to preliminary enjoin GEO[1] from denying

the agency access to inspect the Northwest ICE[2] Processing Center (the NWIPC)—the

sole immigration detention facility in Washington which GEO operates pursuant to a

21

22

---

        [1] The defendants in this matter are both GEO Secure Services, LLC, and the GEO Group,
Inc. Dkt. 15, ¶¶ 2, 3. For simplicity, the Court refers to them collectively as "GEO."
        [2] Immigration and Customs Enforcement.

1  contract with ICE, Dkt. 23. L&I seeks such an injunction pursuant to both HB 1470 § 3[3]

2  (a law requiring L&I to "conduct routine, unannounced inspections of workplace

3  conditions at private detention facilities, including work undertaken by detained

4  persons") and RCW 49.17.070 (a statute authorizing L&I to inspect conditions at

5  worksites generally).

6      GEO removed the action to this Court under the "federal officer" removal statute,

7  28 U.S.C. §1442(a)(1). This statute generally provides that any person acting under an

8  officer or agency of the United States may remove an action to federal court when that

9  person can assert a "colorable federal defense." *Jefferson County v. Acker*, 527 U.S. 423,

10  431 (1999).

11     GEO asserts a colorable federal defense to L&I's efforts to inspect the NWIPC

12  under HB 1470 § 3. In a recent order in a related case, this Court ruled that HB 1470 § 3

13  is unconstitutional as applied to GEO as the operator of the NWIPC. *See The GEO*

14  *Group, Inc. v. Inslee*, ___ F. Supp. 3d ___, No. C23-5626 BHS, 2024 WL 1012888, at

15  *24–26 (W.D. Wash. Mar. 8, 2024). The Court explained that HB 1470 "was designed to

16  apply to only the NWIPC and any other private immigration detention facility that may

17  eventually exist in Washington" and that "§ 3 discriminates against [GEO] in violation of

18  the intergovernmental immunity doctrine." *Id.* at *16, 26. The Court preliminarily

19  enjoined the State and its agencies, including L&I, from enforcing HB 1470 § 3 against

20  GEO. *Id.* at *30. L&I's motion to remand is accordingly denied.

21

22     [3] HB 1470 § 3 is codified as RCW 70.395.050.

ORDER - 2

1        The Court also declines to consolidate this case with *State of Washington Dep't of*

2  *Health*, No. C24-5029 BHS. Because L&I is not entitled to inspect the NWIPC under HB

3  1470 § 3, the primary remaining issue in this case is whether it is entitled to do so under

4  RCW 49.17.070. This statute authorizes L&I to conduct reasonable inspections of any

5  workplace under certain circumstances. By contrast, the primary issue in *State of*

6  *Washington Dep't of Health*, No. C24-5029 BHS, is whether the Washington Department

7  of Health (DOH) is entitled to inspect the NWIPC under an entirely different statute,

8  RCW 43.70.170. That statute authorizes DOH to inspect any condition constituting a

9  threat to the public health. These cases concern different statutes and, in turn, involve

10  different questions of law and fact. The motion to consolidate is denied.

11        To the extent L&I seeks an injunction under HB 1470 § 3, such relief is plainly

12  foreclosed by the Court's order declaring that law to be unconstitutional as applied to

13  GEO. *See Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26. However, to the

14  extent L&I seeks a preliminary injunction under RCW 49.17.070, it demonstrates an

15  entitlement to such relief. This statute is a generally applicable safety and health law and,

16  therefore, it does not suffer from the same constitutional deficiency as HB 1470 § 3.

17        The Court also rejects GEO's assertion that it is entitled to "derivative sovereign

18  immunity" against L&I's claim under RCW 49.17.070. That immunity generally

19  provides federal contractors a defense to liability when the contractor's actions are both

20  authorized and directed by a government official *and* performed pursuant to an Act of

21  Congress. Because GEO does not identify any federal law prohibiting state legislatures

22  from imposing generally applicable safety and health laws like RCW 49.17.070 on

private immigration detention facilities, it is not immune from L&I's claim under this statute. L&I's motion for a preliminary injunction is accordingly granted in part and denied in part.

## I.   BACKGROUND

In 2023, the Washington legislature enacted HB 1470, which amended chapter 70.395 RCW to impose numerous requirements on "private detention facilities." Following the passage of this law, GEO sued Washington's governor, Jay Inslee, and attorney general, Robert Ferguson, in a different case before this Court, seeking to enjoin the enforcement of HB 1470 against it as the operator of the NWIPC. *See* Dkt. 1 in *Inslee*, No. C23-5626 BHS. GEO claimed, among other things, that HB 1470 is unconstitutional as applied to it because the law impermissibly discriminates against it in violation of the Supremacy Clause's intergovernmental immunity doctrine. *Id.* ¶¶ 74–83.

After GEO filed that lawsuit, two L&I officials attempted to inspect the NWIPC on two occasions in December 2023. On December 27, they visited the NWIPC and attempted to inspect workplace conditions at the facility pursuant to HB 1470 § 3. Dkt. 27-5 at 4. The officials explained to the NWIPC's facility administrator, Bruce Scott, that they were "[t]here to open a comprehensive workplace safety and health inspection." *Id.* Scott explained that he had to make a telephone call "before he [gave] [them] permission" to enter the facility. *Id.* Scott left the lobby area and, shortly thereafter, returned and told the L&I officials that "ICE has directed us to not allow you entry today." *Id.* Scott accordingly denied the L&I officials access to the NWIPC. *See id.*

1    These L&I officials subsequently applied for—and obtained—a search warrant

2    from the Pierce County Superior Court to inspect the NWIPC under both HB 1470 § 3

3    *and* RCW 49.17.070. Dkt. 27-4 at 2. The warrant compelled GEO to provide L&I access

4    to the NWIPC "to allow the conducting therein of a safety and health inspection for the

5    purpose of ascertaining and causing to be corrected any conditions presenting safety or

6    health hazards to employees of GEO . . . under chapter 49.17 [RCW], chapter 70.395

7    RCW and Title 296 [WAC]." Dkt. 27-6 at 3.

8    On December 29, 2023, the two L&I officials returned to the NWIPC and served

9    the search warrant on three GEO employees, including GEO's assistant facility

10   administrator, Michael Knight, and demanded access to the facility so that they could

11   inspect it for workplace hazards. Dkt. 27-2, ¶ 5 Dkt. 3, ¶ 3. Knight left the front lobby

12   area to meet with several ICE officials and, together, they reviewed the warrant. Dkt. 3,

13   ¶¶ 5, 6. These ICE officials then "directed GEO to deny access to L&I for the requested

14   inspection." *Id.* ¶ 6. Knight, accompanied by an ICE officer, Ryan Jennings, returned to

15   the front lobby area and Jennings informed the L&I officials that "ICE is denying entry

16   into the facility." *Id.* ¶ 7.

17   L&I sued GEO in Pierce County Superior Court, requesting an injunction

18   requiring GEO to provide the agency access to inspect the NWIPC under both HB 1470 §

19   3 and RCW 49.17.070. Dkt. 1-3, ¶¶ 21, 30.

20   GEO removed the case to this Court under the "federal officer" removal statute, 28

21   U.S.C. § 1442(a)(1). Dkt. 1. GEO asserts that it was entitled to remove the case pursuant

22   to this statute because it has "colorable federal defenses to Plaintiff's claims," including

1   that HB 1470 § 3 impermissibly discriminates against it in violation of the Supremacy

2   Clause's intergovernmental immunity doctrine. *Id.* at 19, 30–32.

3          L&I moves to remand this matter to the Pierce County Superior Court, arguing

4   that the federal officer removal statute does not apply because GEO is unable to assert a

5   colorable federal defense. Dkt. 10 at 3. L&I also moves to consolidate this matter with

6   *State of Washington Dep't of Health*, No. C24-5029 BHS. Dkt. 18. In that case, DOH

7   seeks to enjoin GEO from denying it access to the NWIPC so that DOH may inspect the

8   facility under both HB 1470 § 3 (which also requires DOH to inspect "private detention

9   facilities" for conditions relating to food service and handling, sanitation, hygiene, and

10  nutrition) and RCW 43.70.170 (which authorizes DOH to inspect any place containing a

11  condition constituting a threat to the public health). *See* Dkt. 1-2, ¶¶ 5.2–6.1, in No. C24-

12  5029 BHS. L&I finally moves to preliminarily enjoin GEO from denying it access to the

13  NWIPC to conduct inspections under both HB 1470 § 3 and RCW 49.17.070, arguing

14  that these laws plainly require GEO to provide the agency such access. Dkt. 23 at 3, 6–8,

15  11–12.

16          After L&I filed these motions, the Court entered its order in *Inslee* declaring HB

17  1470 § 3 to be unconstitutional as applied to GEO as the operator of the NWIPC. ___ F.

18  Supp. 3d. ___, 2024 WL 1012888, at *24–26. The Court ruled that this law

19  impermissibly discriminates against GEO in violation of the Supremacy Clause's

20  intergovernmental immunity doctrine. *Id.* The Court preliminarily enjoined "[t]he State

21  and its agencies" from enforcing HB 1470 § 3 against GEO as the operator of the

22  NWIPC. *Id.* at *30.

1    That order materially affects the merits of L&I's motions.

2                          **II.   DISCUSSION**

3    **A.    L&I's motion to remand is denied because GEO asserts a colorable federal
     defense.**

4          L&I contends that, to remove this case under 28 U.S.C. § 1442(a)(1), GEO must

5    assert a "colorable federal defense" justifying its act of denying L&I access to the

6    NWIPC and that GEO is unable to assert such a defense. Dkt. 10 at 3, 7. L&I does not

7    dispute that GEO satisfies the remaining requirements of this statute. *See generally id.*

8          GEO responds that its notice of removal asserts numerous colorable federal

9    defenses, one of which is that HB 1470 § 3 impermissibly discriminates against it in

10   violation of the Supremacy Clause's intergovernmental immunity doctrine. Dkt. 31 at 23.

11         The federal officer removal statute allows persons acting under a federal officer or

12   agency to remove an action to federal court when the action relates to any act performed

13   under color of federal office:

14         (a) A civil action or criminal prosecution that is commenced in a State
           court and that is against or directed to any of the following may be removed
15         by them to the district court of the United States for the district and division
           embracing the place wherein it is pending:
16                 (1) The United States or any agency thereof or any officer (or any
                   person acting under that officer) of the United States or of any
17                 agency thereof, in an official or individual capacity, for or relating to
                   any act under color of such office or on account of any right, title or
18                 authority claimed under any Act of Congress for the apprehension or
                   punishment of criminals or the collection of the revenue.
19

20   28 U.S.C. § 1442(a)(1).

21         "The purpose of the federal officer removal statute is 'to ensure a federal forum in

22   any case where a federal official is entitled to raise a defense arising out of his duties.'"

1   *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244

2   (9th Cir. 2017) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)). "The right of

3   removal is 'absolute for conduct performed under color of federal office,' and the 'policy

4   favoring removal should not be frustrated by a narrow, grudging interpretation of

5   § 1442(a)(1).'" *Goncalves*, 865 F.3d at 1244 (internal quotation marks omitted) (quoting

6   *Manypenny*, 451 U.S. at 242).

7       A party seeking removal under § 1442(a)(1) "bears the burden of showing that (a)

8   it is a 'person'[4] within the meaning of the statute; (b) there is a causal nexus between its

9   actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it

10  can assert a 'colorable federal defense.'" *Goncalves*, 865 F.3d at 1244 (internal quotation

11  marks omitted) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th

12  Cir. 2006)).

13      When an action is properly removed under § 1442(a), the district court has "the

14  power to hear claims that would not be independently removable." *Watkins v. Grover*,

15  508 F.2d 920, 921 (9th Cir. 1975). Indeed, if "some of the [plaintiffs'] allegations . . . do

16  not relate to the [defendants'] acts under color of federal office, 'removal need not be

17  justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only

18  apply to one claim to remove the case.'" *Baker v. Atlantic Richfield Co.*, 962 F.3d 937,

19  945 (7th Cir. 2020) (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir.

20  2017)).

21

22      [4] "[C]orporations are 'person[s]' under § 1442(a)(1)." *Goncalves*, 865 F.3d at 1244.

L&I does not dispute that GEO satisfies the first two requirements for removal under §1442(a)(1). It instead argues that GEO is unable to assert a colorable federal defense. The Court disagrees. One of the defenses asserted in GEO's notice of removal is that HB 1470 § 3 impermissibly discriminates against GEO in violation of the intergovernmental immunity doctrine. Dkt. 1, ¶¶ 30–32. Under this Court's order in *Inslee*, this defense is not only colorable, but valid. *See* ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26. For this reason alone, L&I's motion to remand is **DENIED**.

**B.     L&I's motion to consolidate is denied because this matter is not sufficiently similar to *State of Washington Dep't of Health*, No. C24-5029 BHS.**

L&I moves to consolidate this matter with *State of Washington Dep't of Health*, No. C24-5029 BHS, asserting that these two cases are "very similar" because they "involv[e] two state agencies, the same Defendant, the same facility, roughly the same time frame, and nearly identical legal arguments." Dkt. 18 at 2. GEO responds that, considering this Court's order in *Inslee*, the issues in these cases are not sufficiently similar to warrant consolidation. Dkt. 36 at 5. GEO contends that the primary issue in this case is whether L&I is entitled to inspect the NWIPC for workplace hazards under RCW 49.17.070, whereas the primary issue in *State of Washington Dep't of Health*, No. C24-5029 BHS, is whether DOH is entitled to inspect the NWIPC for any "threat to the public health" under RCW 43.70.170. *Id.* at 8–10.

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall*

1    *v. Hall*, 584 U.S. 59, 77 (2018). "To determine whether to consolidate, a court weighs the

2    interest of judicial convenience against the potential for delay, confusion and prejudice

3    caused by consolidation." *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp.

4    805, 807 (N.D. Cal. 1989).

5           Judicial convenience is not served by consolidating these two cases. The only

6    similar claims in these cases are DOH's and L&I's claims that they are each entitled to

7    inspect the NWIPC under HB 1470 § 3. These claims are easily resolvable considering

8    the Court's order declaring HB 1470 § 3 to be unconstitutional as applied to GEO as the

9    operator of the NWIPC. *See Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26.

10          The remaining claims in these cases are not similar. DOH seeks to inspect the

11   NWIPC pursuant to a statute authorizing it to inspect "any . . . place" containing "any

12   article or condition constituting a threat to the public health including, but not limited to,

13   outbreaks of communicable diseases, food poisoning, contaminated water supplies, and

14   all other matters injurious to the public health." RCW 43.70.170. L&I seeks to inspect the

15   NWIPC pursuant to an entirely different statute authorizing it to inspect "any . . .

16   workplace" "in carrying out [its] duties under" WISHA. RCW 49.17.070(1)(a)–(b).

17   These cases accordingly present different legal issues.

18          DOH and L&I also attempted to inspect the NWIPC at different times and under

19   different circumstances. DOH attempted to inspect the NWIPC on two occasions in

20   November 2023. Dkt. 12, ¶¶ 13–16, in No. C24-5029 BHS. During these visits, DOH

21   sought to inspect the facility pursuant to *only* HB 1470 § 3. *Id.* It did *not* attempt to

22   inspect the facility under RCW 43.70.170. *See id.* By contrast, L&I attempted to inspect

the NWIPC on two occasions in December 2023. Dkt. 27-2, ¶ 4; Dkt. 27-5 at 4. During

its second visit to the NWIPC, L&I attempted to inspect the facility pursuant to a search

warrant, which expressly stated that L&I was authorized to inspect the NWIPC under HB

1470 *and* WISHA, chapter 49.17 RCW.[5] *See* Dkt. 27-6 at 3.

Because DOH never attempted to inspect the NWIPC under RCW 43.70.170, an

issue exists as to whether that agency has constitutional standing to seek an injunction

pursuant to this statute. L&I does not face a similar problem.

These actions accordingly do not involve sufficiently common issues of law or

fact to warrant consolidation. L&I's motion to consolidate is **DENIED**.

**C.     L&I's motion for a preliminary injunction is granted only insofar as the agency seeks to inspect the NWIPC under RCW 49.17.070.**

L&I moves to preliminarily enjoin GEO from denying it access to inspect the

NWIPC pursuant to both HB 1470 § 3 and RCW 49.17.070, arguing that these laws

plainly require GEO to provide the agency such access. Dkt. 23 at 3, 8–9, 12.

GEO responds that, considering this Court's order in *Inslee*, L&I "has no chance

of succeeding on the merits because its attempts to enter, inspect, and enforce HB 1470

are unconstitutional under the doctrine of Intergovernmental Immunity due to

impermissible discrimination." Dkt. 38 at 18. GEO further asserts that L&I never

attempted to inspect the NWIPC under RCW 49.17.070. *Id.* at 6. GEO contends that,

even so, it is entitled to "derivative sovereign immunity" against L&I's claim under this

---

[5] The warrant also stated that L&I was entitled to inspect the NWIPC under Title 296 WAC. Dkt. 27-6 at 3.

1   statute. *Id.* at 12–17. This immunity generally provides federal contractors a defense to

2   liability when the contractor's actions are both authorized and directed by a government

3   official and performed pursuant to an Act of Congress. GEO asserts that it is entitled to

4   this immunity because ICE directed it to deny L&I access to the NWIPC. *Id.* at 13, 16–

5   17.

6           L&I's reply acknowledges this Court's order enjoining it from enforcing HB 1470

7   § 3 against GEO, but asserts that the order was wrongly decided: "Although the Court

8   partially enjoined HB 1470, DOH & L&I do not concede that HB 1470 is

9   unconstitutional." Dkt. 42 at 3 n.3. L&I also contends that, contrary to GEO's assertion

10  otherwise, the agency *did* attempt to inspect the NWIPC under RCW 49.17.070,

11  evidenced by the search warrant that it served on GEO and which expressly

12  "command[ed] entry under 'chapter 49.17 Revised Code of Washington.'" *Id.* at 6

13  (quoting Dkt. 27-6 at 3). L&I further asserts that "GEO's derivative sovereign

14  [immunity] defense fails because it is a defense to damages, not injunctive relief." Dkt.

15  42 at 6. This is so, L&I argues, because the sovereign immunity enjoyed by federal

16  officers themselves does not apply to suits seeking injunctive relief. *Id.* at 7. L&I

17  accordingly contends, "Just as sovereign immunity itself does not bar suits seeking only

18  prospective injunctive relief, so too for *derivative* sovereign immunity." *Id.* L&I finally

19  asserts that GEO is not entitled to derivative sovereign immunity because it "cannot meet

20  its burden to show that blocking access to state inspectors was *compelled* by its contract

21  with ICE." *Id.* at 7.

22

ORDER - 12

To obtain preliminary injunctive relief, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of such relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020).

L&I's claim seeking an injunction under HB 1470 § 3 is plainly foreclosed by this Court's order in *Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *24–26, 30. That order declared HB 1470 § 3 to be unconstitutional as applied to GEO, and preliminarily enjoined "[t]he State and its agencies" from enforcing HB 1470 § 3 against it. *Id.* at *30. To the extent L&I seeks a preliminary injunction allowing it to inspect the NWIPC under HB 1470 § 3, its motion is **DENIED**.

However, L&I's claim seeking an injunction under RCW 49.17.070 has merit. There is no doubt that this statute's plain terms apply to the NWIPC. Indeed, the statute authorizes L&I to conduct reasonable inspections of *any* workplace:

> (1) . . . [T]he director [of the department of labor and industries], or his or her authorized representative, in carrying out his or her duties under this chapter, upon the presentation of appropriate credentials to the owner, manager, operator, or on-site person in charge of the worksite, is authorized:
> (a) To enter without delay and at all reasonable times the factory, plant, establishment, construction site, or other area, workplace, or

environment where work is performed by an employee of an employer;[6] and

(b) To inspect, survey, and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, *any such workplace* and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent, or employee.

RCW 49.17.070(1)(a)–(b) (emphasis added).

The statute also requires L&I to obtain the consent of any owner or operator of a worksite to conduct such an inspection, unless the agency obtains a search warrant under RCW 49.17.075[7] or an exception to constitutional warrant requirements applies. RCW 49.17.070(3)–(4).

Here, L&I obtained a search warrant from the Pierce County Superior Court that expressly compelled GEO to provide the agency access to inspect the NWIPC under WISHA, chapter 49.17 RCW:

---

[6] The Washington Supreme Court has held that "detained workers at a private detention facility are 'employees' within the meaning of the [Minimum Wage Act]." *Nwauzor v. The Geo Group, Inc.*, 2 Wn.3d 505, 526 (2023). GEO does not dispute that the detained workers at the NWIPC are also employees under WISHA, which defines "employee" broadly:

"Employee" means an employee of an employer who is employed in the business of his or her employer whether by way of manual labor or otherwise and every person in this state who is engaged in the employment of or who is working under an independent contract the essence of which is his or her personal labor for an employer under this chapter whether by way of manual labor or otherwise.

RCW 49.17.020(5).

[7] RCW 49.17.075 authorizes L&I to "apply to a court of competent jurisdiction for a search warrant authorizing access to any factory, plant, establishment, construction site, or other area, workplace, or environment where work is performed by an employee of an employer." The statute also provides that "[t]he court may upon such application issue a search warrant for the purpose requested." *Id.*

1

NOW THEREFORE, by the authority of this Court of the State of Washington, you are hereby commanded to allow entry into the workplace of GEO Secure Services LLC . . . to allow the conducting therein of a safety and health inspection for the purpose of ascertaining and causing to be corrected any conditions presenting safety or health hazards to employees of GEO Secure Services LLC, under *chapter 49.17 Revised Code of Washington* (RCW), chapter 70.395 RCW and Title 296 of the Washington Administrative Code (WAC).

2

3

4

5

Dkt. 27-6 at 3 (emphasis added).

6

Upon obtaining this warrant, two L&I officials visited the NWIPC, served the

7

warrant on GEO, and demanded access to the facility. Dkt. 27-2, ¶ 5; Dkt. 3, ¶ 3.

8

Therefore, GEO's assertion that L&I never attempted to inspect the NWIPC under RCW

9

49.17.070 is patently false. *See* Dkt. 38 at 6.

10

 The Court also rejects GEO's arguments that it is entitled to derivative sovereign

11

immunity against L&I's claim under RCW 49.17.070. To understand the degree to which

12

sovereign immunity extends to federal contractors, the Court must first clarify the origins

13

of sovereign immunity and its application to federal officers themselves.

14

"Absent a waiver, sovereign immunity shields the Federal Government and its

15

agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity

16

is derived from the British common law doctrine that the King was infallible." *Schilling*

17

*v. United States House of Representatives*, 102 F.4th 503, 506 (D.C. Cir. 2024) (citing

18

Edwin M. Borchard, *Government Liability in Tort*, 34 Yale L.J. 1, 2 n.2 (1924)). "A suit

19

is against the sovereign if 'the judgment sought would expend itself on the public

20

treasury or domain, or interfere with the public administration,' *or if the effect of the*

21

*judgment would be to 'restrain the Government from acting, or compel it to act*.'"

22

1    *Schilling*, 102 F.4th at 506 (emphasis added) (internal citation omitted) (quoting *Land v.*

2    *Dollar*, 330 U.S. 731, 738 (1947); *Larson v. Domestic & Foreign Commerce Corp.*, 337

3    U.S. 682, 704 (1949)).

4         L&I therefore incorrectly asserts that sovereign immunity is merely "a defense to

5    damages, not injunctive relief." Dkt. 42 at 6. The Supreme Court has stressed that

6    "[t]here are the *strongest* reasons of public policy for the rule that [specific] relief cannot

7    be had against the sovereign." *Larson*, 337 U.S. at 704 (emphasis added). "The

8    Government" serves "as representative of the community as a whole" and "'the

9    interference of the Courts with the performance of ordinary duties of the executive

10   departments of the government, would be productive of nothing but mischief.'" *Id.*

11   (quoting *Decatur v. Paulding*, 1840, 14 Pet. 497, 516, L. Ed. 559).

12        However, government officials are *not* immune from suits for injunctive relief

13   when they "allegedly act[] 'beyond [federal] statutory authority or unconstitutionally.'"

14   *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (quoting *Larson*, 337 U.S. at 693).

15   This is because "such *ultra vires* action by a federal officer 'is beyond the officer's power

16   and is, therefore, not the conduct of the sovereign.'"[8] *Pollack*, 703 F.3d at 120 (quoting

17   *Larson*, 337 U.S. at 690).

18   _____

19        [8] In support of its assertion that sovereign immunity does not apply to suits seeking only injunctive relief, L&I cites both *Philadelphia Co. v. Stimson*, 223 U.S. 605, 619–20 (1912), and

20   *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Dkt. 42 at 7. Those cases, however, confirm the well-established principle that federal officers are not immune from suits for injunctive relief when they have engaged in *ultra vires* action. In *Stimson*, the Court stated

21   that, "in case of an injury threatened by [a federal officer's] *illegal* action, the officer cannot claim immunity from injunction process." 223 U.S. at 619 (emphasis added). In *Armstrong*, the

22   Court similarly explained that "[t]he ability to sue to enjoin *unconstitutional* actions by . . . federal officers is the creation of courts of equity, and reflects a long history of judicial review of

By logical extension, when the Government's "authority to carry out [a] project [is] validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of [a] *contractor* for executing its will." *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20–21 (1940) (emphasis added). To this extent, "government contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943). "That immunity, however, unlike the sovereign's, is not absolute." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016).

To be entitled to such immunity, a federal contractor's conduct must have been *both* "all authorized and directed by the Government of the United States' *and* 'performed pursuant to [an] Act of Congress.'" *Campbell-Ewald*, 577 U.S. at 167 (emphasis added) (quoting *Yearsley*, 309 U.S. at 20). Therefore, when "a Government agent ha[s] 'exceeded his authority' or the authority 'was not validly conferred'" by Congress, "the agent could be held liable for [his] conduct." *Campbell-Ewald*, 577 U.S. at 167 (quoting *Yearsley*, 309 U.S. at 21). This immunity is accordingly "limited to cases in which a contractor 'had no discretion . . . and completely followed government specifications.'" *Cabalce v. Thomas E. Blanchard & Associates*, 797 F.3d 720, 732 (9th

---

*illegal* executive action, tracing back to England." 575 U.S. at 327 (emphasis added). Neither case held that sovereign immunity *never* applies to suits seeking injunctive relief against federal officers.

1   Cir. 2015) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th

2   Cir. 2008)).[9]

3       Nothing in *Yearsley* limits the immunity enjoyed by federal contractors to suits

4   seeking monetary damages. The decision makes clear that this immunity ensures that

5   "there is no *liability* on the part of the contractor for executing [Congress's] will."

6   *Yearsley*, 309 U.S. at 21 (emphasis added). The term "liability" simply means "[t]he

7   quality or state of being legally obligated or accountable; legal responsibility to another

8   or to society, enforceable by civil remedy or criminal punishment." BLACK'S LAW

9   DICTIONARY 997 (9th ed. 2009). This term should not be confused with any requested

10  "relief," which is "[t]he redress or benefit, esp[ecially] equitable in nature (such as an

11  injunction or specific performance), that a party asks of a court." *Id.* at 1404. To provide

12  L&I its requested relief in this case—an injunction prohibiting GEO from denying the

13  agency access to inspect the NWIPC for workplace hazards—the Court must first find

14  GEO liable—namely, that it is legally obligated to provide L&I such access under RCW

15  49.17.070.

16      Derivative sovereign immunity thus provides federal contractors under certain

17  circumstances a defense to *liability*—that is, being legally obligated, accountable, or

18  responsible—regardless of the particular relief sought. *Yearsley*, 309 U.S. at 20;

19

20      [9] The Supreme Court has disagreed with the Ninth Circuit "to the extent that it described
    *Yearsley* as 'establish[ing] a narrow rule regarding claims arising out of property damage caused
    by public works projects.'" *Campbell-Ewald*, 577 U.S. at 167 n.7 (quoting *Gomez v. Campbell-*

21  *Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014)). "Critical in *Yearsley* was not the involvement of
    public works, but the contractor's performance in compliance with all federal directions."

22  *Campbell-Ewald*, 577 U.S. at 167 n.7.

BLACK'S, *supra*, at 997. The extension of sovereign immunity to federal contractors in this manner is entirely consistent with sovereign immunity's application to federal officers themselves. *See Schilling*, 102 F.4th at 506 (sovereign immunity generally prevents "suit[s] . . . against the sovereign" when, among other things, "*the effect of the judgment would be to 'restrain the Government from acting, or compel it to act*'" (emphasis added) (quoting *Larson*, 337 U.S. at 704).

Nevertheless, GEO is not immune from L&I's claim under RCW 49.17.070. The congressional act relevant to this case—the Immigration and Nationality Act (INA)—authorizes the federal government to contract with private entities to operate privately-owned immigration detention facilities. *See United States v. California*, 921 F.3d 865, 882 n.7 (9th Cir. 2019) ("[T]he INA contemplates use of both federal facilities *and* nonfederal facilities with which the federal government contracts." (citing 8 U.S.C. §§ 1231(g), 1103(a)(11)).

The contract between ICE and GEO—in at least *three* separate provisions—expressly requires GEO to operate the NWIPC in compliance with all applicable state safety and health laws. Concerning workplace safety laws specifically, the contract provides that "[a] safety program shall be maintained in compliance with *all* applicable Federal, state and local laws, statutes, regulations and codes. The Contractor shall comply with the requirements of the *Occupational Safety and Health Act of 1970* and all codes and regulations associated with 29 CFR 1910 and 1926." Dkt. 27-9 at 87.

RCW 49.17.070 plainly falls under this contractual provision. As L&I asserts, the Occupational Safety and Health Act (the OSH Act) "delegates its authority to

1   Washington to enforce workplace safety laws because Washington maintains a 'State

2   Plan' that meets or exceeds federal standards." Dkt. 23 at 6 (citing 29 U.S.C. § 667(b),

3   (c); LAWS OF 1973, ch. 80, § 1).[10] "Since 1975, L&I has assumed the federal

4   Occupational Safety and Health Administration (OSHA)'s responsibility for enforcing

5   occupational safety and health standards in Washington State." Dkt. 23 at 6 (citing 24-1

6   at 2). OSHA's regional administrator confirmed in a letter to L&I's assistant director for

7   the Division of Occupational Safety and Health that Washington's state plan "includes

8   enforcement with respect to the employees of federal contractors, subject to limited

9   exceptions." Dkt. 24-1 at 2. GEO does not assert that any exception applies here.

10   Therefore, the NWIPC is plainly subject to L&I investigations under RCW 49.17.070.

11          Separately, regarding any services that GEO is required to provide under the

12   contract, another provision states: "*All* services must comply with the Performance Work

13   Statement (PWS) and *all* applicable federal, *state, and local laws and standards. Should a*

14   *conflict exist between any of these standards, the most stringent shall apply.*" Dkt. 27-9 at

15   53 (emphasis added). And another provision requires GEO to operate and maintain the

16

17          [10] The OSH Act provides: "Any State which, at any time, desires to assume responsibility
     for development and enforcement of occupational safety and health standards relating to any
18   occupational safety or health issue . . . shall submit a State plan for the development of such
     standards and their enforcement." 29 U.S.C. § 667(b). WISHA accordingly grants L&I the
19   authority to maintain such a plan:

20          The director is authorized to adopt by rule any provision reasonably necessary to
            enable this state to qualify a state plan under section 18 of the Occupational
            Safety and Health Act of 1970 . . . to enable this state to assume the responsibility
21          and enforcement of occupational safety and health standards in all workplaces
            within this state subject to the legislative jurisdiction of the state of Washington.

22   RCW 49.17.230.

NWIPC in accordance with all applicable federal, state, and local safety and health laws

and, in the event of a conflict, the most stringent shall apply:

> The facility . . . shall be designed, constructed, *operated*, and *maintained* in accordance with *all* applicable federal, *state, and local laws, regulations codes, guidelines, and policies. In the event of a conflict between federal, state, or local codes, regulations or requirements, the most stringent shall apply. In the event there is more than one reference to a safety, health*, or environmental *requirement in an applicable law, standard, code, regulation or Government policy, the most stringent requirement shall apply.*

Dkt. 27-9 at 86 (emphasis added).

These provisions plainly require GEO to comply with generally applicable state

safety and health laws like RCW 49.17.070.[11] "When examining similar language in a

different federal contract, the Ninth Circuit held that a state law is not 'applicable' if it

violates the Constitution." *Inslee*, ___ F. Supp. 3d ___, 2024 WL 1012888, at *20 n.11

(citing *Gartell Const. Inc. v. Aubry*, 940 F.2d 437, 440 (9th Cir. 1991)). In *Inslee*, this

Court accordingly ruled that, because HB 1470 § 3 impermissibly discriminates against

GEO in violation of the Supremacy Clause's intergovernmental immunity doctrine, the

law also does not apply to GEO under its contract with ICE. ___ F. Supp. 3d ___, 2024

WL 1012888, at *24–26. Central to that ruling was the Court's conclusion that HB 1470

§ 3 "was designed to apply to only the NWIPC and any other private immigration

detention facility that may eventually exist in Washington." *Id.* at *16.

---

[11] GEO asserts that a separate provision of the contract requires it to follow ICE's 2011 Performance Based National Detention Standards (PBNDS) when an otherwise applicable state law conflicts with those standards. Dkt. 38 at 15–16. In *Inslee*, the Court expressly rejected this argument. ___ F. Supp. 3d ___, 2024 WL 1012888, at *20 n.10. In any event, GEO does not demonstrate that RCW 49.17.070 conflicts with the PBNDS.

1    RCW 49.17.070 does not suffer from the same constitutional deficiency.

2    "Historically, the states' police powers are broad in permitting state decisions that relate

3    to public health, safety, and welfare, so long as state laws do not violate the federal

4    Constitution." *Velasquez-Rios v. Wilkinson*, 988 F.3d 1081, 1088 (9th Cir. 2021). State

5    laws similarly are not permitted to "alter[] or contradict[]" federal statutes governing

6    immigration removal decisions. *Velasquez-Rios*, 988 F.3d at 1089. However, "[a]bsent

7    federal law to the contrary, the Supremacy Clause . . . leaves considerable room for states

8    to enforce their generally applicable laws against federal contractors." *Geo Group, Inc. v.*

9    *Newsom*, 50 F.4th 745, 755 (9th Cir. 2022) (en banc). The Supremacy Clause accordingly

10   tolerates "many generally applicable health and safety laws." *Id.* at 755 n.4.

11   RCW 49.17.070 is such a law: it applies to "*any* . . . workplace" "where work is

12   performed by an employee of an employer." RCW 49.17.070(1)(a)–(b) (emphasis added).

13   Therefore, this statute plainly does not discriminate against private immigration detention

14   facilities in violation of the Supremacy Clause.

15   Critically, GEO fails to identify *any* federal law prohibiting state legislatures from

16   imposing generally applicable safety and health laws like RCW 49.17.070 on private

17   immigration detention facilities.[12] GEO similarly fails to identify any federal law

18   authorizing ICE and, in turn, GEO from denying L&I access to the NWIPC so that the

19   agency may inspect workplace conditions at the facility pursuant to both RCW 49.17.070

20   

21   [12] To the extent GEO suggests that RCW 49.17.070 is preempted in any manner by the PBNDS, the Court already rejected a similar argument in *Inslee*. Because the PBNDS is a mere agency publication, not a federal law, it cannot serve as a basis for a preemption defense. *Inslee*,

22   ___ F. Supp. 3d ___, 2024 WL 1012888, at *21–22.

*and* a state court search warrant. Therefore, by denying L&I access to the NWIPC under

these circumstances, neither ICE nor GEO acted with "authority . . . validly conferred" by

"*Congress*." *Yearsley*, 309 U.S. at 20 (emphasis added); *accord Pollack*, 703 F.3d at 120

("'[S]uits for specific relief against officers of the sovereign' allegedly acting 'beyond

statutory authority or unconstitutionally' are not barred by sovereign immunity." (quoting

*Larson*, 337 U.S. at 689, 693)). GEO is accordingly not immune from L&I's claim under

RCW 49.17.070.

GEO misleadingly suggests that it played no role in denying L&I access to the

NWIPC and that only ICE did so. *See* Dkt. 38 at 6, 8, 10, 13, 16–17, 23 n.9. Based on this

suggestion, GEO contends that, "[i]f Plaintiff wants . . . access to the NWIPC as it claims,

it needs to seek that relief not from GEO, but from the entity that actually controls access

to the Facility." Dkt. 31 at 6.

These are the undisputed facts. On December 29, 2023, two L&I officials visited

the NWIPC and served the search warrant on GEO's assistant facility administrator,

Knight, and demanded access to the facility so that they could inspect it for workplace

hazards. Dkt. 27-2, ¶ 5 Dkt. 3, ¶ 3. The warrant explicitly directed *GEO* to provide L&I

access to the NWIPC. Dkt. 27-6 at 3. Knight left the front lobby area to meet with several

ICE officials and, together, they reviewed the warrant. Dkt. 3, ¶¶ 5, 6. Knight testified

that these ICE officials "directed *GEO* to deny access to L&I for the requested

inspection." *Id.* ¶ 6 (emphasis added). Knight, accompanied by ICE officer Jennings,

returned to the front lobby area and Jennings informed the L&I officials that "ICE is

denying entry into the facility." *Id.* ¶ 7; 27-2, ¶ 5. Under these circumstances, ICE

1   undisputedly directed *GEO* to deny L&I access to the NWIPC. Knight testified as much.

2   It is of no consequence that Jennings, not Knight, was the person who expressly informed

3   the L&I officials of this decision.

4        The record also does not support GEO's assertion that "ICE exercises exclusive

5   control over all access to secure portions of the NWIPC." Dkt. 28 at 13. In support of this

6   assertion, GEO quotes the following portion of its contract with ICE: "'ICE will exercise

7   full control over granting, denying, withholding or terminating unescorted government

8   facility and/or sensitive Government information access . . . based upon the results of a

9   background investigation.'" *Id.* (quoting Dkt. 39-2 at 70).

10       However, as L&I asserts, "GEO flatly misrepresents its contract with ICE"

11  because "the omitted language, hidden in GEO's response by an ellipsis, makes clear that

12  this language only applies to *GEO employees* who might need access to ICE's

13  administrative offices within the facility." Dkt. 42 at 7. The unedited quoted provision

14  states:

15       **IV. BACKGROUND AND CLEARANCE PROCEDURES**

16       SECURITY REQUIREMENTS
         REQUIRED SECURITY LANGUAGE FOR
17       SENTIVE /BUT UNCLASSIFIED {SBU} CONTRACTS

18       The United States Immigration and Customs Enforcement (ICE) has
         determined that performance of the tasks as described in Contract *TBD at*
19       *award* requires that the Contractor, subcontractor(s), vendor(s), etc. (herein
         known as Contractor) have access to sensitive DHS information, and that
20       the Contractor will adhere to the following.

21       **A. PRELIMINARY DETERMINATION**
         ICE will exercise full control over granting; denying, withholding or
22       terminating unescorted government facility and/or sensitive Government

information access for *Contractor employees*, based upon the results of a background investigation.

Dkt. 39-2 at 70 (last emphasis added).

This provision plainly applies to only GEO's employees or employees of any subcontractors, vendors, and the like. It does *not* apply to state agencies like L&I that are lawfully entitled to inspect the NWIPC pursuant to both a generally applicable state safety and health law and a search warrant.[13] Furthermore, GEO—not ICE—is the "employer" subject to inspections under RCW 49.17.070. The Court thus rejects GEO's contentions that ICE exclusively controls access the NWIPC and that L&I improperly sued GEO instead of ICE.

In sum, the contract between GEO and ICE plainly requires GEO to comply with generally applicable safety and health laws like RCW 49.17.070. And regardless of this contract, L&I is entitled to inspect the NWIPC under RCW 49.17.070 absent any federal law prohibiting state legislatures from imposing such generally applicable laws on private immigration detention facilities. *See Yearsley*, 309 U.S. at 20; *Pollack*, 703 F.3d at 120.

Having concluded that GEO wrongly denied L&I access to the NWIPC when the agency sought to inspect the facility under RCW 49.17.070, the Court is satisfied that L&I establishes the remaining factors necessary for a preliminary injunction. L&I establishes a likelihood of irreparable harm in the absence of such relief and that an

---

[13] L&I also persuasively argues that the quoted provision, along with others in the contract, "restrict[] GEO employee's and detainee's access to [only] ICE offices within the NWIPC," "not the NWIPC itself." Dkt. 42 at 8.

1    injunction is in the public interest because, as L&I asserts, "GEO is unilaterally blocking

2    the State's ability to enforce its own laws designed to protect workers." Dkt. 23 at 20.

3        L&I's statutory duty to ensure that workplace conditions at the NWIPC are safe is

4    plainly in the public interest. And GEO's act of denying the agency access to the facility

5    to inspect such conditions has already caused irreparable harm to the State. Indeed, GEO

6    denied L&I access to the NWIPC despite the agency's clear statutory authority to

7    conduct such inspections under RCW 49.17.070 *and* a state court warrant compelling

8    GEO to provide L&I access to the NWIPC under this statute. GEO has therefore inflicted

9    significant harm on the State by disobeying the lawful authority of its legislative,

10   executive, and judicial branches. The Court will not impair the State's inherent and broad

11   power to promote public health, safety, and welfare.

12       L&I's motion to preliminarily enjoin GEO from denying it access to the NWIPC

13   so that the agency may inspect the facility under RCW 49.17.070 is **GRANTED**.

14                                  **III.  ORDER**

15       Therefore, it is hereby **ORDERED** that L&I's motion to remand, Dkt. 10, and

16   motion to consolidate, Dkt. 18, are **DENIED**. L&I's motion for a preliminary injunction,

17   Dkt. 23, is **GRANTED in part** and **DENIED in part**. The motion is granted insofar as

18   L&I seeks an order preliminarily enjoining GEO from denying it access to the NWIPC so

19   that the agency may inspect the facility under RCW 49.17.070. GEO is preliminarily

20   enjoined from denying L&I such access to the NWIPC. The motion is denied insofar as

21   L&I seeks an order preliminarily enjoining GEO from denying it access to the NWIPC so

22   that the agency may inspect the facility under HB 1470 § 3.

1    The Court encourages the parties to consult and agree on a resolution to this case

2  in light of this order.

3    Dated this 1st day of July, 2024.

4

5

_____

6    BENJAMIN H. SETTLE
    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 27